# CIRCUIT COURT OF BALTIMORE CITY.

---

Filed December 19, 1907.

---

THE TRUSTEES OF THE EUTAW STREET M. E. CHURCH OF BALTIMORE CITY ET AL.

VS.

THE ASBURY SUNDAY SCHOOL SOCIETY OF BALTIMORE CITY ET AL.

---

*Joseph C. France* and *Richard M. Duvall* for complainants.

*Hill, Ross & Hill* for defendants.

ELLIOTT, J.—

This cause has been instituted for the purpose of having this court en-force the divisions of two legacies of $1,000 each. given by the will of a certain Thomas Armstrong, late of Baltimore city, which was admitted to probate by the Orphans' Court on or about the 19th day of November, 1858.

These two legacies were given to two corporations, both of which had been previously incorporated, each accurately and definitely named in said will by its own particular title. The specific sums of money were not made immediately payable, but payment was deferred pending the death of the widow of the testator, to whom he had given a life estate in all his property, real and personal, of which said money was a part.

The widow of the said Thomas Armstrong survived him until the year 1881, during which year she died, and said legacies became payable to several legatees.

Incident to the death of Mrs. Armstrong proceedings were instituted in this court by Robinson W. Cator, surviving executor, for the purpose of having the will of Thomas Armstrong construed, and a distribution of his estate made under the direction and by the authority of this court. Such distribution was made in accordance with decrees passed in April, 1881, and in the following year, 1882, said legacies were paid in full to the several corporations named in the will.

The contention in this cause grows out of the said payments, and the claim is now made that by reason of certain things which happened between the probate of the will and the payment of legacies, this court should intervene and compel the said two legatees to divide these legacies with two of the plaintiffs, and account to them for the income arising thereout since said payment.

It is necessary to a complete understanding of the case that a brief statement should be made of the intervening happenings which are claimed to entitle the said plaintiffs to a division of the said legacies.

Nothing important did happen until at the annual session in 1869 of the Baltimore Annual Conference of the Methodist Episcopal Church, as alleged in the bill, the Presiding Bishop of said Conference "set off the said Eutaw Street Station from and divided the said Baltimore City Station of the Methodist Episcopal Church."

It does not, however, immediately appear what pertinency such setting off and division have to the question at issue, and we do not know until we notice that the two corporations mentioned in the will, to each of which a legacy of $1,000 was given are said to be organizations connected with the aforesaid, "The Baltimore City Station of the Methodist Episcopal Church," which was divided by the said Presiding Bishop, and that the Poor Society and the Eutaw Street Sunday School connected with the Eutaw Street Station then set off, bore the same relation to the new station, that the two defendant corporations named as legatees, bore to the original station before division.

One more thing, however, is to be noticed, and that is that in 1870, after the division of "the Baltimore City Station," and the setting off and incorporation of the "Eutaw Street Station," a meeting of the male members of both stations was held for the purpose of deciding upon a fair division of the property and assets which had belonged to the two congregations or charges, which before the division had constituted the Baltimore City Station, and been held by that corporation and in its name.

At said meeting it was resolved "that any unpaid legacies when due and paid, shall be equally divided between Baltimore City Station and Eutaw Street Station," and it is claimed in the eighth paragraph of the bill that said resolutions "had reference particularly to the said two legacies hereinbefore mentioned and none other, and was so understood by all the officers and members of all corporations in any way interested in said legacies."

I have now stated all the material facts upon which the claim of the plaintiffs is based.

It does seem not a little strange, in view of what is alleged to have been a general understanding of the officers and members of all the corporations interested in the two legacies, that they were to be divided when paid, that it was not until at least twenty years after such payment, and after the known application of the money to other purposes, that anyone was heard to insist that the resolution quoted was intended to be applied to these particular legacies. And it must not be forgotten that many of those present at the male members' meeting in 1871 were connected for years, with either one or the other of these corporations, plaintiff and defendant, and there were possibly some who were interested on both sides.

But I do not desire to reflect in any way upon the recollection of anyone as to what was understood between thirty-five and forty years ago, because I do not consider that I am at liberty to decide this case upon a recollection of that age, either one way or the other.

Nor is it either my duty or my right to decide or to suggest what might be a generous or charitable view to take of the matter of the divisions of the legacies.

My sphere of action in this case is a very narrow one. I am to decide whether or not any action has been taken by either of the above-named legatees, which has placed them under any legal or equitable obligation, to divide the legacies coming into its hands.

It will not do to view this matter from the standpoint of the possible beneficiaries. These are too indefinite, and besides, few, if any, of these whom the testator had in view are still alive at this distance of fifty years.

I only propose to concern myself with a few facts.

(1) The legatees mentioned in Thomas Armstrong's will were corporations capable of taking.

(2) They each, immediately upon the probate of the will, had a vested legacy of $1,000. The mere postponement of the time of payment until the death of testator's widow, did not postpone the vesting.

(3) The two corporate legatees had nothing to do, as such, with the division of the Baltimore City Station and the setting off of the Eutaw Street Station.

(4) They took no part, as corporations, in the male members' meeting held in 1871, when the resolution heretofore quoted was adopted.

(5) It is to be seriously doubted whether they would have the right, without consideration more than has been shown, to enter into any agreement for a division of moneys which they held in trust, and as a gift from Thomas Armstrong.

(6) That after this lapse of time, the action of these defendant legatees is the best index of their understanding of their holdings of these legacies.

(7) That no consideration is shown to have moved to the two legatees for any agreement to divide their holdings.

I do not find, therefore, any ground upon which I can grant the relief prayed for, and shall dismiss the bill.

So far as the Baltimore City Station is concerned, the bill should be dismissed as to it with costs.

In view, however, of the apparent hope held out by the two corporate legatees of a settlement of plaintiffs' claim, which probably encouraged suit. I shall let each side pay its own costs.